I'm going to say to the people of the United States, this is Anthony Perez. On behalf of Mr. Perez, Mr. Preface, Mr. Johnson, on behalf of the people, Mr. Ivan O. Perez. Mr. Johnson. Thank you, Your Honor. May it please the Court, my name is Doug Johnson, and I represent Anthony Perez, who is currently serving 65 years before his murder conviction by the charges. I'd like to address what happened in this case with regard to the cell phone testimony. A couple related issues, one, Mr. Kennedy, the defense expert, was barred, and at the same time the state's expert agent  far too broadly. This issue was very heavily litigated prior to trial. Both Kennedy and Rashke testified. I'm not sure Rashke did, but they knew what he was going to say from his report. But first, I'd start out by saying that Kennedy testified, he had advanced college degrees, he testified that what historical cell site data is, he testified that he had licenses, and all he wanted to do was rebut the state. But he didn't have the qualifications to do that. Did he counsel? He had even, I would say, fewer qualifications than Washburn, who the defense asked be barred from testifying as an expert. That motion was granted, so how can you come now and make this argument? In the record, they seem to put those issues together, Washburn and Kennedy, and I submit those are two separate issues. Whether or not Washburn was properly barred is not before the Court. I submit he was. He was a detective in narcotics. I don't believe that means he could, but setting him aside Well, that's what was the subject of your motion and one of your motions in limine, correct? One of the motions in limine involved Washburn, but I don't believe that's relevant to what happened with Kennedy. Well, I'm looking at his qualifications versus Kennedy's. I believe that Kennedy, they're two separate people. For one thing, in his computer engineering degree, he had advanced degrees Washburn did not have. Kennedy just wanted to get up and say here are the there's a cell tower here, he knows what cell towers are, and the phone pinged off this cell tower at this time, and then he wanted to say the limitations of that, be it the weather, be it the topography, be it other things like that, and he was barred from doing so. It's how far he wanted to go. There's, there are things in this record that say that isn't even science. We don't even know, we need an expert on that. So, I believe Washburn and Kennedy are separate. Now, the State argues, well, you act yes to a high bar. Correct. No. No. We are saying that Kennedy should have been permitted for the limited testimony that he wanted to give. How was, how was the defense prejudiced? I think given the vigorous cross-examination that was conducted of Reschke. I know Your Honor, we've tried a lot of cases and I believe we can agree that a trial of vigorous, no matter how good the cross is, you need your own expert. It's not the same. You can destroy someone, at least in a legal sense, but I believe there's no substitute for putting on your own expert. Counsel, if we were to decide that there was some error in the court's rulings on the cell phone on either side, what's your assessment on whether or not there would be sufficient evidence to support the conviction aside from the cell phone evidence? I just believe the evidence, in this case, in this case, for once, I can tell you the evidence here was very, very insufficient. Cheyenne Patton may be the worst in all of your experience, Cheyenne Patton may be the worst witness I've ever seen. She came forward and she said nothing initially. She was beyond crazy at the time she was initially apprehended. She was there at the scene. She placed herself at the scene of the murder, arguably involved in aiding and abetting this and accountable. She then lied. She said, I'm not a gang member, and then they said, yes, you are. She, nothing about her  Isn't it well settled that it's up to the jury to assess and determine the credibility and believability of the witnesses? Isn't it the jury's job to do that? It absolutely is, and in most cases, I hate coming before your honors and saying the jury got it wrong. But here, jailhouse snitches, jailhouse, these people would have said anything. They got great deals, Pena and Brooks. We have someone who came forward, who was in the victim's car, the passenger, Estrada, it was Christian Rudlakava who did this. I am 100% sure. And then he comes back and says 85% sure. We have no forensic testimony tying Anthony Perez to this crime. We have police officers who stopped the fleeing car, watched it, and said three people got out of that car, not four. But four doors were open. It was at night, in a field, all four doors were open. Let me ask you this, Mr. Johnson, in your brief, you're basically saying this evidence shouldn't have come in, or this evidence is not believable. You go throughout your brief in that fashion. Would you agree that in evaluating whether or not the evidence is sufficient to convict that we consider all the evidence, not just the properly admitted evidence, but all of the evidence, even improperly admitted evidence in determining whether or not the evidence was sufficient to convict? Well, I don't believe you got even the... Say, for example, the state should not have been able to determine whether or not the evidence was sufficient to convict. I don't believe you should consider that in determining whether or not... Well, the law is, have you read People v. McDowell, or the recent Supreme Court case from 2019, People v. Drake? For purposes of double jeopardy, all the evidence that's submitted at the original trial may be considered in determining whether or not, determining the sufficiency of the evidence. Retrials are a proper remedy if the evidence presented at the initial trial, including any improperly admitted evidence, was sufficient to sustain a conviction. I have not read that. Well, that's the law. And it has been the law. I noticed that it talks about purposes for double jeopardy, and I'm out here arguing about double jeopardy. Well, you're asking for an outright reversal, are you not? In the first issue, in the first issue, with regard to the insufficiency of evidence, I am. But with regard to cellular phone, the admissibility of the cellular phone evidence, I'm simply saying, no, I think we should remand the case for properly admitted evidence against this young man. And to get on that, in this record, they constantly say, I'm not putting the cell phone at a specific residence. I'm not doing that. It's not specific. But there is a key admission in the State's brief. On page 23, they say, Defendant Raschke opined that the cell phone was in the fleet navigator. This is as specific as in any case. Well, Raschke didn't say that. That's the State's interpretation. Well, yes, that is the State's interpretation. But I think it's true. Here. Well, go ahead. Looking at the cell phone records, there wasn't a foundation for the Sprint records, correct? There was a foundation, yes. The Sprint representative testified. You have evidence that two Defendant's residence are tied to just family members. I was going to say not tied to the Defendant, but tied to family members. And there's correspondence on those phones with this cell phone number at issue, correct? Yes, sir. And Patton puts the Defendant in that vehicle, correct? Yes, Patton does. Patton puts the Defendant in that vehicle. And then Raschke does not give a specific location for the Defendant, but gives an opinion that it was in the general area where the and I'm not quoting verbatim, but in the general area of the flight from the police. I believe when one interprets his testimony, as the State honestly did, he does put it in that car. And at one point, he does say, that's the Ridgeway location. He puts it in that car. And   And that's where I had an address. So, do you understand the inferences that flow from what we just discussed? I think you're right. Your argument is that it's just simply not enough to testify that the Defendant was the holder of that phone during that period of time, correct? I'm not arguing with my short time today. I'm not arguing Well, we'll give you a little extra time. You have a lot of issues. I am not arguing right here about tying that phone to the Defendant. I do believe it was not sufficiently tied. However, I don't believe what I'm arguing is the cell phone testimony from Agent Raschke, no matter how many times he said, it's just general, it's just approximate, he was very specific. And that is not allowed under the law. And he did not have the limitations. And I think this is interesting and hard. In Hill, they said, it may be an abuse of discretion if you don't set forth the limitations. So I'm reading this, and I'm thinking, is that up to the cross-examiner? Or is that up to the government if they're putting this in? I think there were disclaimers here. Well, there's a disclaimer, too, yes. But I'm talking about, at this point, with regard to the, I believe, with Raschke, they had to set forth topography, weather, not always the closest tower. And they didn't do any of that. And I believe that's where Hill talked about the disclaimers, though. That was what was important to the Court in Hill, that there was a disclaimer. And here, there was also a disclaimer that Raschke acknowledged, that Sprinch had given. And that's another strong issue in favor of barring this testimony. That disclaimer comes from Sprinch. They say, okay, this may or may not be accurate. And we didn't leave it at that, though. Then, Raschke gets up and says, oh, you know, I've talked to those guys. We set them straight. My little group has set them straight and said, you know, you guys say your stuff's not accurate, but for the purposes we're using for it, and he advises the jury, that's clear hearsay. Yet that came out. An expert can testify to information reasonably relied upon by persons in the field, correct? Correct. And he never said that. That gets to the point where the Court said beforehand, I think we're talking about a prize situation here. And so it's going to be up to Raschke as to say whether or not we can reasonably rely, if people reasonably rely on this information. And Raschke never  one of the things that he said, and again, this goes to, I think, your argument, he testified that it was his opinion from the cell phone data that the cell phone was moving east after the navigator came to a stop, correct? Yes. And your position is that that was an improper opinion. There was no non-sufficient foundation for that opinion? Absolutely. Far too far. Never been allowed. That's based on the per call measurement data. Never been allowed in an Illinois court. And to pinpoint where this young man is running afterwards? No case has done that. In fact, I think recently in a case that came down after this was briefed, people versus Martin, Raschke tried to get someone too close inside a room and they reversed his conviction based on that out of the first district. And so, yes, I believe that trying to say, well, this phone is going east is just too much. And with regard to the disclaimer, the Sprint representative disagreed with Raschke, but he clearly, and this is why I think general rule about expert testimony, we have to be cautious because it can overpersuade. And now we've got the science that can overpersuade. And so we have Raschke coming in and doing this, and even though he says it's approximate, I don't know, the fact is it was too close. The defense, I just think, did an incredible job trying to point out the issues here. And they're arguing, okay, we'll go to trial based on plotting. You've barred Kennedy. Raschke's just going to plot. And the prosecutor said, that's it. No, absolutely. The page number for that is he is just going, Raschke's going to get up there and he will not offer an opinion. Quote, he's not going to give any sort of opinion. Page 399 of the record. And then the state said, well, that's a haphazard comment. This is a first-degree murder prosecution, Your Honor. And I don't think that the defense has to figure that the prosecutor might be making a haphazard comment. And it wasn't. I mean, how specific this is going to be became so jumbled up. At one point, the prosecutor is asked, the court says, well, are you going to put the fall state on the arc or within the arc? And the prosecutor on one page says, well, we're going to put a judge just on the arc. And then two pages later, I think it's, I don't have the site. I will. The prosecutor says, no, it's within the arc. They're just trying to push this through to get Raschke on the stand. I understand it, having fought to get an expert on the stand because I know they're going to come in dressed really well and they're going to know how to do what they're doing. And I'm not putting, I'm not saying that's wrong. I'm saying we want to get this expert on the stand. The state even said he has, there's a typo in the record, but the state comes back on page 396 and says, Raschke has never offered such a specific opinion. It's written as ever, but I think if you read the context of that on 396, you'll see. Is that citation in your brief? I don't believe it. Let me ask you this. The state actually in their argument, one of their opening comments is that violations of 340, Supreme Court Rule 340.1.6 and 7, failure to cite the record should result in forfeiture. And reading your briefs, the first several pages, there's no citations to the record. Why not? Just as an introduction to provide background. I believe there are citations. Isn't that your statement of facts, though? That's not the entire statement of facts. Not the entire statement, okay. No, there are citations to the record later on, but you're now directing us to pages that were not in your brief. I didn't want to come up here and reiterate everything. You have time. How about some comments on the gang issue? May I make one final comment about the Southern Dakota issue? Yes. I think what's interesting is the Frye issue, how this happened here. The defense counsel said, okay, if you're going to let Raschke testify, then I think we do need to have a Frye hearing. And this is after the court said, he's distinguishing Evans, I believe, in the federal courts, and says, you know, that's Daubert, and we need to have Frye here. So if Raschke can do Frye, then we're going to admit this testimony. And so then they go on, and the court makes it clear, we're going to allow Raschke to testify. And defense counsel says, okay, then I think we need a Frye hearing. And then the court decides on 396, nah, I don't think this is science that we need a Frye hearing for. So it is just back and forth, and I just wanted to make that point. Not to mention that with regard to whether it is science, Raschke added his own margin of error. When he did his PowerPoint presentation, he then, for reasons that we can't even follow, kind of put in like a 10% margin of error, because that's what his CAS group had come up with. So this went far beyond what was represented previously, and I believe that's how there was a use of discretion to let it in. With regard to the gang member's testimony. I have a question with respect to the gang testimony. You have a problem with the quote, expert testimony that was given by lay persons with regard to gang membership. Also, concerns about Daman's testimony. But wasn't this defendant charged with unlawful possession of a firearm by a gang member? Therefore, the state was required to actually prove the elements of that offense, correct? And so, this testimony was absolutely necessary for that proof, was it not? Not all of the testimony. Gang testimony, as we know from long ago, people versus Stevens, I believe, and beyond, and again, the over-persuasion of expert testimony, it could have been limited. So they had one element. But instead, what we did is we put in a photograph, a couple photographs. One we didn't put in the photograph. That's in our brief. We just put in one of the jailhouse snitches testifying to what the picture looked like. But then we also put in a photograph of a bunch of gang members and showing the evils of gangs. Well, it also showed association of the defendant with other gang members. Is that correct? It does. There was no denial by Mr. Perez that he was in a gang. And I think did it need to prove that element of the state's crime? I'm sorry, of the state's charge. Did we need to put in, I'm probably going to be killed for testifying against Mr. Perez. You know what happens to gang members when they testify against others? They get killed. And that was a repeated theme with Pena and Patton, and I'm not sure with Brooks. It just was overkill with the gang evidence. Well, in light of a recent Supreme Court case in Murray, the state really has to be careful about how much they do put in. Isn't that correct? In order to meet the requirements of Murray? I think we did come across that case because I think Mr. Perez has mentioned it. And I agree that they have to show it's a, for me, it's a confusing opinion. But yes, the state has to show what I believe if I have it right, what the gang experts why he reasonably arrived at his conclusions. He has to set those forth. But detail is required with respect to gang activity and offenses during a particular period of time and what the gangs do. I do believe that. And I think that that still shouldn't be opened up to the point where Pena says things like, well, younger gang members can talk to us. They're respected. I'm just doing this because it's the right thing. Were there objections made at the trial court level when this testimony came in? I believe objections were made in general to the gang testimony and to what was being said. Not to everything. But I believe specifically to preserve enough of the issue that it made it clear that the gang testimony was being objected to. There's no motion to eliminate or to bar Dave Demons completely. And I'm not necessarily saying he had to be because they had to prove that out to the state's judge. Demons' testimony that when he was asked about what his rival mean and he said it, that means they had the propensity to fight with one another, perform violent acts against one another as well as other crimes, right? Yes. I mean, isn't that basically commonly understood? Oh, I think we all, I know that there's exceptions to allowing propensity evidence now, but I still think it should be invaded with caution. And we have, again, yes, this is, they could provide a motive for an inexplicable act. What if the trial court instead had just taken judicial notice of the General Assembly's findings that neighborhoods and schools throughout our state are being terrorized and plundered by street gangs, and that street gangs are spreading into the suburbs and rural areas, that they're committing brutal crimes against persons and property. They present a clear and present danger to the public and to the safety of the community. It's, what I'm saying is it's common sense that General Assembly has accepted that they are plundering and ruining neighborhoods throughout our state and the rivalry between street gangs is in the paper almost daily. I 100% agree, and that's why we have to be so cautious. And I think actually, Your Honor, I think that's why this happened here. I think it was somewhat, if I'm using the term correctly, Machiavellian. I think we're going to let this, we've got to get this guy off the streets. I know nothing about anything else he's done, but we've got to get him off. So we're going to bar your expert, we're going to allow Rashdie to testify, and we're going to get jailhouse snitches because we've got to fight gangs, and I think we still, we can't let our fear of gangs trump an individual's specific rights. Thank you, Mr. Johnson. You'll have time to report. Mr. Taylor. Good morning, Your Honors. Due to the number of issues in this case, I'll start asking questions, and anything not brought up, I'll try to get to as well. I believe Justice Zinoff, you mentioned with regards to the murder, and with regards to the need to actually prove that the defendant was part of a street gang. And in that sense, what was presented in that trial here was what the state needed to do. There was no issue regarding how both Cheyenne Patton and Hugo Payne have testified. Although I will say, with regards to the defendant's claims as to their testimony, those have been forfeited, as while there was objection, that trial was not put in a post-trial motion, nor was there any argument as to point of error. I look forward to just ignoring the forfeiture as they would argue that there was no issue with regards to their testimony. Mr. Taylor, let me ask you, what admissible evidence was there linking the defendant to the cell phone number in question? The sprint data indicated that that phone number was ascribed to the defendant's father, and that two cell phones found within the parent's home, one belonged to the mother, one belonged to the sister, were in contact with that cell phone. There's nothing directly linking that number to the defendant, is that correct? I don't believe there's anything specifically directly linking that number to the defendant. So isn't that a problem? Sorry? Tell us why that's not a problem. That's not an issue because even though certain sets of evidence can be used to convict someone of a crime, and  ascribed to the defendant's father, it was in contact with other members of the family from the data from Sprint indicating the general area that the cell phone took during the night of the shooting. Excuse me, data from Sprint? That data came in only through Raschke's testimony, is that right? No. What are you referring to? I'm sorry, the representative of Sprint testified in the foundation for the entire records. Raschke's purpose was just to compile information into something understandable and that was presented to the jury through his testimony. Because while the information is already there, it's... He plotted the cell phone data using cell tower information together with the records. Yes. He plotted the cell phone data, but if it's not linked to the defendant's phone, isn't that a problem? No, it's not an issue because that phone is still connected to the defendant. It does not need to be ... It's successfully connected to the defendant. There's no direct link to the phone. However, from the cell phone data from Sprint, in case the path that the phone took during the early hours of November 30th and... You're saying it's a reasonable inference it was the defendant and not some other person in possession of that phone? Yes. But we have to connect the phone to the defendant before we worry about the data and where that phone was, right? So what we had to connect the defendant really was just what showed up on the phone after the search warrants were gotten and the data was extracted, which was Anthony's stuff and apparently Sprint had indicated that the phone had belonged to a person named Anthony. But was it ever proven that Nina or where the... That Nina was his sister? I believe the testimony was only indicated that it was found in a bedroom of his sister, but we don't have... We didn't have her name necessarily there, did we? I don't think there was any specific testimony that the sister asked you to assist in. Right. And then wasn't the information that showed up on that phone hearsay? How do we get past that? It is not hearsay. Why not? In POV Holoco, it was reported or held that automatic computer information is not hearsay because there is no input from another person to create information. It is created by the device itself. Well, somebody typed in Anthony's stuff. That's not... That's from a person. A computer doesn't say Anthony's stuff. That's based upon what a person... That's information and knowledge that the person has that then is transferred from that person's brain through his fingers into the phone. That's hearsay, isn't it? Well, it's not because it's still the computer itself that has the data. It's... It's because when the police were able to download the information, they didn't add anything to it. They didn't try to explain it. It was already there. So that's computer-stored. Computer-stored data is hearsay. Computer-generated data is not. So how is this not, as I believe Justice Burkett was pointing out, how is this not computer-stored, that in other words somebody had to put it in there in order for it to remain there? How is that not hearsay? I know these concepts. I mean, it took a little while. Quite frankly, I've had to write it down several times to get the distinction between computer-stored and computer-generated. But as I understand it, the computer-stored is somebody actually has input. So that means that somebody had to type in Anthony's stuff. So as I understand it, I mean, I don't know if I'm right, that's computer-stored, therefore hearsay. As the people understand it, from the information that was on the phone was not computer-stored but computer-generated, but you do make a good point, Your Honor, and unfortunately it's time I don't have a specific answer for you. As to the specialty evidence argument, people argue that the evidence presented at trial was more than sufficient to convict the defendant of the multiple charges against him. People acknowledge that with the recent decision in Murray, as to the charge of firearm possession of a street gang member, what Murray held as to what state must present may not necessarily align with what was presented in this case. However, with how the defendant was sentenced, we believe that his productive or charge was concurrent with the actual murder charges so that if this court were to remove that particular charge from the defendant, it would not affect his actual sentence. The only direct evidence that the defendant was the actual shooter as the person in possession that fired the fatal shots was Pat's testimony that the defendant said he just shot someone when he got back to the car, correct? That was the only direct evidence. The only direct evidence, the only other evidence was from Hugo Pena who said that the defendant told him that he wanted to shoot. Right, so I have two statements, one to Pena and one to Pat. Right. Yeah, the only direct, those are the direct statements that it was the defendant who made the shots. And there were two guns recovered, one outside the vehicle and one inside the vehicle, correct? The firearm inside the vehicle was the murder weapon. Correct. But as to Cheyenne Patton, the defendant points out about her credibility issues, but essentially, the defendant points out essentially credibility issues. With Cheyenne Patton, with the jailhouse informants, with the gang evidence, all this is based on credibility. This is an argument that was presented to the jury. The defense attorney at trial was arguing how these people were not credible, that their testimony was not being believed, but the jury heard that information and decided to still convict the defendant based on the testimony provided to them. And as to the cell phone data, as to the cell phones, with regards to the expert testimony as to the cell phones, the defense points out that their expert, Mr. Kennedy, should be allowed to testify. However, because of how the motion limine hearing went, in which the defense counsel argued for a very high standard and level of expertise for this particular information to be presented as under expert testimony, Mr. Kennedy wasn't qualified to do so. But now, counsel argued today that these two, the one motion in limine regarding Washburn should be separated from Kennedy's and that Kennedy did have the background, certainly in from his employment, to understand the technology. So, why was it not an abuse of discretion to prevent him from testifying? It was not an abuse of discretion because of just what, even though Mr. Kennedy had some knowledge, it just wasn't enough. It wasn't enough for him to testify that the Sprint records, the Sprint information was not reliable data. I mean, Raschke was allowed to comment on it and testify to hearsay from people from Sprint, but Kennedy was not allowed to testify to his opinion that this information was simply not reliable. Why wasn't he qualified to at least say that? He wasn't qualified to It's not just a piecemeal basic qualification. It's are you fully qualified to testify as to this information in its entirety, not just to an aspect of it. When they did a hearing on Sergeant Washburn, even though he didn't necessarily have degrees, he had lots of on-hand experience with this information, but the court found that it was sufficient. And with Mr. Kennedy, many of his degrees were decades old and his information is from well before the current cell phones that were used at the time. Well, he had testified as an expert, though, more recently, in that particular area, had he not? I'm trying to remember when he last testified. I believe it was a few years before that hearing he had testified. Right. If I recall correctly. Mr. Taylor, if we decide that Kennedy's testimony was erroneously excluded, tell us why that that would not require a reversal of the defendant's conviction. If the defense only wanted Mr. Kennedy to testify as to the Sprint's disclaimer, that the information provided by Sprint is not necessarily accurate, that information was brought in multiple times by the Sprint representative at the foundation, in which the defense counsel repeatedly had him specify that on the disclaimer Sprint does not guarantee the accuracy of the coordinates from it. And also, there was a very vigorous cross-examination of A.M. Raschke by the defense counsel focusing on the fact that the disclaimer exists. So, if the defense counsel wanted Mr. Kennedy to testify as to that, like, that information was brought in repeatedly. And the jury heard that information. Mr. Johnson spoke about the possibility that other things may have interfered with the data that was collected, like weather. Was there an issue as to the weather that night? Did the weather come up at all during the trial? I don't recall any testimony regarding the weather as to that night. There was no storm, no rain. I don't think so, no. What about the Facebook photo? Doesn't that Facebook photo testimony from Pena violate the Best Evidence Rule? As to that Facebook photo, I'll say with the point out that once again, that particular argument has been forfeited. It was never put in a post-trial motion. And the defense could never argue plain error on public review. So that argument should not even exist before this Court. However, as regards to the Best Evidence Rule, the State was never trying to put that particular photo into evidence. It really had Pena testify as to what he had seen on Facebook, just that he saw this particular photo of the defendant with the new background. And despite the defendant's argument, it is not necessary to try to go through the Best Evidence Rule because Pena was really presenting his own observations. Under the defendant's argument, it seems that any time a witness were to testify, if it's something that they have seen or perceived that could have been a photograph or something else, that they must now use the Best Evidence Rule as to try to hunt down a photograph of another witness. Who knows? But it was offered to show the truth of the matter asserted that the defendant was wearing a do-rag in the photo. So it's not just that I saw this. It was offered and argued for the purposes of showing that the defendant may have appeared to have long hair because of his dress. Correct? I believe his point was that Pena testified as to seeing this photo and that he had mentioned to the defendant that that particular do-rag seems to make him have long hair. And the defendant was just a smirk or a smile. So you're arguing that that is a tacit admission since he didn't deny it? Correct. And I do wish to also touch upon the argument as regards to the IPI instruction and as to P187, another photograph that wasn't admitted to evidence. Again, both those arguments were forfeited because it was on post-trial motion and there was no argument as to plain hair. I want to touch on those particular arguments. As to the IPI instruction, it is mandatory that particular instruction should be introduced because of the fact that it's mandatory or not mandatory. I believe per that instruction, if asked for, it should be given to the jury. However, the only mandatory jury instructions are ones that are supposed to be the ones that relate to the evidence that the state needs to present and as to requirements of the jury to follow the law. This particular instruction merely states that the evidence regarding the street gang member is just evidence of it's just evidence to indicate I'm sorry, I lost my train of thought for a second. This particular instruction only informs the jury that this particular evidence is just there to show that the defendant may be part of the street gang and only relates to whether or not they can find him guilty of having fired a street gang member. But doesn't it also provide motive for the murder? Yes, it does provide motive for murder but of course I found that evidence as being affiliated with the street gang is allowed to be presented to show the motive for murder or other intangible acts. Are there any questions in regards to the points presented? No. Thank you. We ask that you uphold the defendant's convictions. Thank you. Mr. Johnson, please follow up. Just to go through these points yes, Kennedy did author on page 346, he talks about how he has given this type of testimony before. I said I would have the site 396 also I'm sorry the prior reference is on 346. On 396 the prosecutor says after the judge says we don't think a fraud hearing is necessary that's my understanding judge I don't think in that in his report at all he ever, I submit to you that's a typo, it should be, at all he never provides an opinion that says based on the coordinates or whatever, the arts that I have an opinion that the cell phone was at this location at this time. I don't think he gives that opinion in the report and I don't intend to elicit such an opinion. That's what this prosecutor said in addition to also saying that he would not offer an opinion rationally on 399. I'm not picking on the prosecutor things move very quickly at trial we all know but this is how the defense proceeded to the trial. Did the trial court enter an order prohibiting that testimony in response to the motion in limine? It was unclear exactly how far Raschke would go. The court made comments such as well yeah I don't see any problem with that but what happened then at trial is actually after the qualifications and Raschke gave his very impressive qualifications basically this is what I do all over the country it's all I do and I do it all the time the defense asked for a sidebar and said okay just so we're clear all he's going to do is plot it. Meaning all he's going to do is say pinged off that cell tower which is located there at this time and the state said yeah that's uh he's an expert in plotting and the court said well I also said he could talk about how cell towers work and things like that but that's about what we got. It opened up a little bit at trial and then he just went off put it very specifically not only meant referencing the Ridgeway location putting it at an address he said he never would but put it in that fleeing car and as I said I believe the state's honest evaluation of what the testimony was was in that fleeing navigator and I note that in the state's closing argument initial closing argument they mentioned the cell phone moving east and in the rebuttal they mentioned the cell phone moving east so this was crucial, crucial testimony and that's why I believe putting it before the jury was reversible error. And what would Kennedy have said in response to that? Kennedy would have said as he said the defense said all I want him to do is rebut that testimony and show there are limitations. He wanted to do the job, the justice in Hill told us that's what you got to do and I also believe in the Wilson case cited by the trial attorneys that we're going to limit it to plotting. We have to tell the jury there's topography, there's weather and there is, your honor, there was nothing about the weather anywhere. I didn't see anything that's why I asked the question but So why was it reversible error for Raschke to go the extra distance here so to speak why was that reversible error? I believe because he went too far, not to mention a phone that wasn't tied to the defendant sufficiently So you're saying he didn't have the expertise to do that or he misrepresented because if the trial court didn't enter a specific order, he didn't violate a motion or an order in limine So, go ahead I don't know if they reduced it to writing but I think it was clear, especially based on the prosecutor's representations of what was going to be allowed here. The court again, not casting aspersions but was a little bit wishy-washy on exactly what we're going to be able to do and the defense attorney fought and said, okay, we're just going into plotting and that was what was understood right before Raschke went off and pinpointed exactly where this phone was and the jury sent out a question and said where did the defendant live at this time? I mean it was reversible error because Raschke did something the science wouldn't allow him to do. I think the court was persuaded, as I may have been if I was a judge, that Raschke's all over these state of the art on what's happening in these cases but it was just too much. The science doesn't allow that type of precision and that's what Hill said. He said, be careful here because you're going to over-persuade the jury if they don't hear the limitations and they heard nothing about weather, topography, etc. or even where the defendant may have been hanging out that night, not to mention something that hasn't come out Are we really to believe the defendant in this car chase? If he was in that car, is he going to be sitting there making phone calls while the police are chasing him down? Agent Raschke said, this phone has to be activated. If it's just not being used, then I'm not able to track it. But we have this testimony it was reversible error because it was just so powerful from this very credential expert that it defied logic. It's not tied to his father. That's the reason it was reversible error. Other representations were made. We're going to give jury instruction 3.14. Yes, Judge, we're going to do that. And then it didn't. And I know things move fast at trial but there were just too many things that didn't happen that needed to happen. All these that resulted in Mr. Perez not getting a fair trial. The do-rag. It wasn't just a picture, yeah, we saw might have been okay or less prejudicial if they said, well, yeah, I saw a Facebook photo of him with a do-rag. But as Your Honor pointed out, and it looked like he had long hair. Now, I've worn a do-rag. It doesn't make me look like you have long hair necessarily. But if you're going to use that photo that shows hey, it makes you look like you have long hair, then show it. You got a stupid photo. You can't have this guy's opinion. And that's why we have the best evidence rule. That was another error. The internet search. We have a phone on one of these mystery phones that had an internet search that Mr. Perez didn't conduct that made no sense. But still, it was this way to try to, I believe, confuse the jury. Not try, but didn't result in the jury being confused. Wasn't it also hearsay? I believe it was hearsay. He was in custody. He was in custody at the time. So it could not have been him. It could have been an unrelated crime that they were trying to do a research on. That does that I agree with. I would say that because of all the things that happened in this case, we would ask we would initially argue the evidence wasn't sufficient, and I know that's a very high amount of decline. So we request that, but we also request that the case be remanded for appropriate signs to be presented to this jury. And yes, those witnesses, if they can get up and testify, they should be cross-examined and see what the jury decides. Something I thought was interesting, in your prayer for relief, just one last question unless my colleagues have anything else. You ask us to possibly reduce the level of offenses. What is that a reference to? Is that the gang stuff? Yes. So that's another available remedy, correct? Yes, Your Honor. Thank you, Mr. Johnson. Court thanks both parties for their arguments today. The case will be taken under consideration by the Court. A written decision will be issued in due course. Court stands in recess.